# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

DOUBLE COIN TYRE GROUP LTD, a Chinese corporation, and CHINA MANUFACTURERS ALLIANCE LLC, a California limited liability company,

Plaintiffs,

v.

CTR IMPORT & EXPORT, a California corporation, and DOES 1 through 10,

Defendants.

Case No. 5:21-cv-00745-JWH-SPx

**ORDER ON PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION [ECF No. 12]**

## I.  INTRODUCTION

Before the Court is the *Ex Parte* Application of Plaintiffs Double Coin Tyre Group Ltd. ("Double Coin") and China Manufacturers Alliance LLC ("CMA") for a Temporary Restraining Order ("TRO") and Motion for Preliminary Injunction against Defendant CTR Import & Export ("CTR").[1] The Court finds this matter appropriate for resolution without a hearing.  *See* Fed. R. Civ. P. 78; L.R. 7-15.  For the reasons explained below, the Court **DENIES** the Application without prejudice to Plaintiffs' potential noticed motion seeking preliminary injunctive relief.

## II.  PROCEDURAL BACKGROUND

Plaintiffs filed their Complaint on April 27, 2020,[2] in which they assert claims for relief for Trademark Infringement; Trademark Counterfeiting; Trademark Dilution; False Advertising; and Unfair Competition.[3]  Double Coin purports to have served CTR with the Complaint and summons on May 3, 2021.[4]  On May 12, 2021, Plaintiffs filed the instant Application.

## III.  FACTUAL BACKGROUND

The following facts are drawn from the Application.

Double Coin manufactures tires under the name "Double Coin" "through affiliate factories located in China and Thailand."[5]  Double Coin is the registered owner of trademarks used in connection with the sale of Double Coin tires.[6]  "CMA is a distributor of Double Coin tires, and has been the exclusive importer of Double Coin tires into the United States for more than twenty

---

[1]    *Ex Parte* Application for a Temporary Restraining Order and Mot. for Preliminary Injunction (the "Application") [ECF No. 12].

[2]    Compl. [ECF No. No. 1].

[3]    *See generally id.*

[4]    Return of Service [ECF No. 11].

[5]    Application at ¶ 3.

[6]    *Id.* at ¶¶ 8-13.

years."[7]  "CMA purchases Double Coin Tires from [Double Coin] in China or Thailand, and imports the tires to the United States."[8]

Toward the end of 2020, CMA received reports from some of its customers that a competitor was selling Double Coin tires at a steep discount.[9] "Through discussions with its customers, CMA learned that" CTR was "offering the Double Coin tires at discounted prices."[10]  One of CMA's sales managers contacted CTR under an assumed identity and asked to purchase Double Coin tires.[11]  A CTR representative told the sales manager that CTR was "currently out" of the tires in question but "expected more in when a new container from overseas arrived."[12]

CMA's sales manager purchased from CTR a Double Coin tire bearing the Double Coin trademark.[13]  CMA provided the serial number on this Double Coin tire to Double Coin's Thai affiliate, which determined that the tire was "originally sold to a company in Vietnam named Sinhphuc Trading Co., Ltd. for use in Vietnam and other Southeast Asian countries."[14]  Double Coin's Thai manufacturing affiliate "did not give Sinhphuc Trading permission to export the tire to the United States."[15]  Although Plaintiffs do not appear to contend that the tire purchased from CTR is physically different from a genuine Double Coin

---

[7]  *Id.* at ¶ 5.

[8]  *Id.* at ¶ 6.

[9]  *Id.* at ¶ 14.

[10]  *Id.* at ¶ 15.

[11]  *Id.* at ¶ 16.

[12]  Decl. of Rico Austin in Supp. of Application (the "Rico Declaration") [ECF No. 12-1] ¶ 7.  In their unsworn brief, Plaintiffs state it a bit differently: "CTR Import had a container of RLB900 tires off the coast of Long Beach waiting to be unloaded, and they would be able to sell those tires soon." Application at ¶ 17.  The Court relies on the sworn testimony, not the unsworn recharacterization of that testimony.

[13]  *See id.* at ¶ 19.

[14]  *Id.* at ¶ 21.

[15]  *Id.* at ¶ 22.

tire, Plaintiffs maintain that the tires are "not the same" because CMA's warranty and product liability insurance do not apply to tires that CMA did not import and sell.[16]  Moreover, CMA's warranty "is longer and more comprehensive than the warranty set forth on the" invoice for the tire CMA's sales manager purchased from CTR.[17]

On April 12, 2021, counsel for Plaintiffs Double Coin and CMA transmitted to CTR a letter demanding that CTR "immediately cease and desist from selling, offering for sale, distributing, and advertising gray market Double Coin tires . . . ."[18]

## IV.  LEGAL STANDARD

A TRO preserves the *status quo* and prevents irreparable harm until a hearing may be held on the propriety of a preliminary injunction.  *See Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006).  The standard for issuing a TRO is identical to the standard for issuing a preliminary injunction.  *Lockhead Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

"A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right."  *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (citations omitted).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  In the Ninth Circuit, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can

---

[16]   *Id.* at ¶ 28; Decl. of Tim Phillips in Supp. of Application (the "Phillips Declaration") [ECF No. 12-4] ¶¶ 22-26.

[17]   *Id.* at ¶ 28.

[18]   Decl. of Steven Bergman in Supp. of Application (the "Bergman Declaration") [ECF No. 12-2], Ex. 5.

support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotations omitted).

*Ex parte* relief is appropriate if the moving party satisfies the following conditions:

> First, the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures. Second, it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect.

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

## V.  **DISCUSSION**

Plaintiffs argue that this Court should issue a TRO prohibiting CTR from, *inter alia*, selling the subject Double Coin tires.[19] According to Plaintiffs, the unauthorized sale of Double Coin tires will result in a "loss of goodwill and damage to Plaintiffs' reputation" if a TRO is not granted.[20]

To prevail on its request for a TRO, Plaintiffs must establish that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of the injunction; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. "A TRO is 'an extraordinary and drastic remedy.'" *R.F. by Frankel v. Delano Union Sch. Dist.*, 224 F. Supp. 3d 979, 987 (E.D. Cal. 2016) (quoting

---

[19]    Application at 17:8-9.

[20]    *Id.* at 13:8-10.

-5-

*Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)).  Moreover, a TRO "is granted only if there is a true emergency which requires 'preserving the status quo and preventing irreparable harm.'"  *Id.* (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters and Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).  For the reasons explained below, the Court concludes that Plaintiffs have failed to establish all of the *Winter* factors and that they have failed to demonstrate a genuine emergency justifying the extraordinary remedy of an *ex parte* TRO.

Even if Plaintiffs can satisfy the first *Winter* requirement of likelihood of success on the merits, Plaintiffs have not established a sufficient likelihood of irreparable harm.  Plaintiffs argue that they will suffer irreparable harm from lost goodwill and damage to reputation.[21]  "Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm."  *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001).  Here, however, Plaintiffs appear to acknowledge that the Double Coin tires are genuine, except that Plaintiffs have not authorized them to be imported into the United States, and, therefore, these tires are not covered by CMA's warranty or insurance.[22]  Plaintiffs, however, have not shown that these differences are likely to cause irreparable harm.  For example, Plaintiffs have not shown that CTR's customers believe that they are purchasing tires from an authorized reseller.

Most importantly, Plaintiffs have not shown that there is an emergency justifying *ex parte* relief or the drastic remedy of a TRO.  First, it is not clear from the evidence that Plaintiffs submitted whether CTR is likely to continue selling unauthorized Double Coin tires.  A supervisor for Double Coin's Thai

---

[21]     *Id.* at 13:8-10.

[22]     *See id.* at 13:16-19.

affiliate testifies that he "arranged a meeting with Sinhphuc Trading to terminate their purchase agreement with" the affiliate that provided the tires in question to CTR.[23]  Further, CMA's sales manager declares that CTR told him that CTR was "currently out" of the subject tires but "expected more in when a new container from overseas arrived."[24]  It is not clear from this evidence when such a shipment might be expected to arrive, let alone whether its arrival is imminent.

The Court also notes that CMA was first put on notice regarding discounted sales prices for Double Coin tires toward the end of 2020.[25]  But it was not until April 12, 2021, that counsel for Plaintiffs transmitted their cease-and-desist letter to CTR.[26]  Plaintiffs did not file the Complaint until April 27, 2020, and the instant Application was not filed until May 12, 2021.  While these delays are not necessarily overly long, they are also not indicative of a true emergency.  Taken together, the Court finds that the facts of this case do not show the existence of a true emergency justifying the extraordinary remedy of an *ex parte* TRO.

### VI.  CONCLUSION

For the foregoing reasons, the Court **DENIES** the Application.  The Court does so, however, ***without prejudice to Plaintiffs' potential noticed motion for preliminary injunctive relief***.

**IT IS SO ORDERED.**

Dated: May 19, 2021

_____
John W. Holcomb
UNITED STATES DISTRICT JUDGE

---

[23]   Decl. of Lei Gong in Supp. of Application [ECF No. 12-3] ¶ 17.
[24]   Rico Declaration at ¶ 7.
[25]   Application at ¶ 14.
[26]   Bergman Declaration at Ex. 5.